Milton J. Shapp, Governor, et al., Petitioners *v.* Grace M. Sloan, State Treasurer, Respondent. General Assembly of the Commonwealth of Pennsylvania, Intervening Respondent.

Argued September 8, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS and BLATT. Judge KRAMER did not participate.

*Melvin R. Shuster*, Deputy Attorney General, with him *J. Justin Blewitt, Jr.*, Deputy Attorney General,

*Vincent X. Yakowicz,* Solicitor General, and *Robert P. Kane,* Attorney General, for petitioners.

*James M. Marsh,* Chief Counsel, for respondent.

*Roland Morris,* with him *Henry T. Reath,* and *Duane, Morris & Heckscher,* for intervening respondent.

OPINION BY PRESIDENT JUDGE BOWMAN, October 18, 1976:

On July 7, 1976, petitioners[1] instituted this action challenging the constitutional validity of two recent Acts of the General Assembly regarding the control and appropriation of Federal augmentation funds.[2] The State Treasurer was named as the sole respondent. On July 9, 1976, the law firm of Duane, Morris & Heckscher, purporting to represent the General Assembly, filed an application to allow that body to intervene as a party respondent. Petitioners then filed an answer in opposition to this application. By Order of this Court dated July 13, 1976, intervention was provisionally granted to allow the General Assembly* to participate in a hearing regarding peti-

---

[1] Petitioners are: Governor Milton J. Shapp; Attorney General Robert P. Kane; Secretary of Education, John C. Pittenger; Secretary of Transportation, William H. Sherlock; Secretary of Health, Leonard Bachman, M.D.; Secretary of Agriculture, Raymond E. Kerstetter; Secretary of Environmental Resources, Maurice K. Goddard; and the Governor's Justice Commission.

[2] Act of June 29, 1976, P.L.      , No. 117, 72 P.S. §4611 et seq. (Purdon's Pa. Legislative Service, 1976, No. 2, at 189-91), and the Federal Augmentation Appropriation Act of 1976, Act No. 17-A, Session of 1976.

* For purposes of discussion, the pleadings and representations of Duane, Morris & Heckscher will be referred to as those of the "General Assembly," even though petitioners dispute that the "General Assembly," as a body, has authorized any action on its behalf.

tioners' motion for temporary relief heretofore acted upon by this Court.[3] The General Assembly's application to intervene is now before us on the merits.

When the petitioners initially challenged the intervention of the General Assembly and its representation by Duane, Morris & Heckscher, the latter sought and obtained specific written authorization to represent the General Assembly in these proceedings. Such authorization was signed by the President of the Senate, the President Pro Tempore of the Senate, the Speaker of the House of Representatives, and the Majority Leader of the House of Representatives.

While petitioners do not dispute the *standing* or the right of the General Assembly to participate in this litigation, they do question the *manner* in which such participation is sought in this case as well as the retention of private counsel. Specifically, petitioners urge that the General Assembly can exercise its right to intervene only by statute or joint resolution expressing its collective will and not by authority of its majority leadership alone. Further, petitioners argue that there is no statutory provision for the retention of outside counsel by the legislature and that such retention without said statutory provision violates Article III, Section 17, of the Constitution of Pennsylvania.[4]

The issues raised by petitioners necessarily involve the internal affairs and functioning of the General Assembly, which is, of course, a coequal branch

---

[3] *See* our Order of July 15, 1976, at this same docket number.

[4] Pa. Const. art. III, §17, provides:

"The General Assembly shall prescribe by law the number, duties and compensation of the officers and employes of each House, and no payment shall be made from the State Treasury, or be in any way authorized, to any person, except to an acting officer or employee elected or appointed in pursuance of law."

The basic implementing legislation is the Act of January 10, 1968, P.L. (1967) 925, *as amended*, 46 P.S. §42.101 et seq.

of government under our system of separation of powers. *See Stander v. Kelley*, 433 Pa. 406, 421, 250 A.2d 474, 482 (1969), and *Leahey v. Farrell*, 362 Pa. 52, 66 A.2d 577 (1949). Profound respect for that system and a recognition of the proper limits of our authority under it dictate the exercise of judicial restraint in this area of inquiry. While mindful of our duty to protect against violations of the Constitution and statutes of this Commonwealth, we will not involve ourselves unnecessarily in the internal affairs of a coequal branch of government.[5] With that caveat, we now turn to the substantive issues raised by petitioners.

With regard to the retention of outside counsel, we can find no violation of the Constitution or of statutory law. Assuming *arguendo,* that outside counsel are "employees" of the General Assembly within the meaning of Article III, Section 17, of the Constitution,[6] authority for their retention and payment is provided in the appropriation of contingent funds to the legislative leadership.[7] We note that the General Assembly Accounting and Operations Manual, which serves as a guideline for the documentation of expenditures from legislative funds, specifically provides for the use of contingent funds for "professional services." Again, we emphasize that it is not

---

[5] In a somewhat different context in *Leahey v. Farrell, supra,* 362 Pa. 56, 66 A.2d at 579, where the issue was whether the legislature had encroached on the judiciary, the Supreme Court, quoting a lower court opinion, stated:

" 'No less clear is it, under the constitutional distribution of governmental powers, that *the legislature cannot dictate to the courts how they shall decide matters coming before them judicially.*' (Italics supplied.)"

We believe that the same deference is due the legislative branch.

[6] *See supra* note 4.

[7] Act No. 7-A, Session of 1976.

our role to scrutinize how the leadership of a co-equal branch of government chooses to spend contingent funds lawfully appropriated for its use.

With respect to the *manner* in which the General Assembly is attempting to intervene in this case, as distinguished from its *right* to so intervene, we simply abstain from consideration of this issue for the reasons discussed above. Certainly the letters sent to Duane, Morris & Heckscher by the majority leadership are *prima facie* authority to represent the General Assembly and to intervene on its behalf. And we see no reason to interfere or question the authority of that leadership to act on behalf of the General Assembly as a whole. Of course, if the members of the General Assembly are of the opinion that the leadership has exceeded its authority or has acted in a manner contrary to the collective will, they are free to take whatever action they deem appropriate.

The application to intervene is granted, and the authority of Duane, Morris & Heckscher to represent the General Assembly is confirmed.